IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Fluor-Lane South Carolina, LLC | ) | |
| | ) | Civil Action No.: 3:21-cv-01680-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Johnson, Mirmiran & Thompson, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

  Plaintiff Fluor-Lane South Carolina, LLC ("Plaintiff") filed this action to recover cost overruns on a South Carolina Department of Transportation port access construction project ("Project") from its subcontractor, Defendant Johnson, Mirmiran & Thompson, Inc. ("Defendant") who provided professional design services for the project. (ECF No. 1 at 1-2, ¶¶ 3-5.) Specifically, Plaintiff issued multiple backcharges against Defendant for "specific design deficiencies, breaches of [Defendant's] standard of care and/or breaches of the [parties' Professional Services Agreement ("PSA")]." (ECF No. 30 at 2.) Defendant argues that Plaintiff cannot recover the additional costs under the terms of the PSA.

  Defendant filed this Renewed Motion to Compel (ECF No. 25) pursuant to Rule 26(b)(1) and Rule 37(a)(3) of the Federal Rules of Civil Procedure, claiming Plaintiff has not upheld its discovery obligations by producing "complete documents pertaining to [its] detailed estimate on the Project, associated work papers prepared in support of [its] bid, drafts of the estimate, the current detailed job cost report, and the final contingency evaluations and related documents used for purposes of the final bid." (*Id*. at 3-4.) Plaintiff responded that the requested documentation covers work outside the scope of the parties' agreement, and therefore, that it is not relevant. (ECF

1

No. 30 at 3-4.) For the reasons below, the court **GRANTS** Defendant's Renewed Motion to Compel (ECF No. 25) pursuant to the terms of this Order.

## I.     LEGAL STANDARD

### A. Discovery Generally

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *See, e.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017).

Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While the Rules do not expressly define relevance, courts have determined that it is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3 (N.D. Okla. Jan. 3, 2018) (citing *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (internal citations omitted)). Moreover, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"The discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir.

1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense."  Fed. R. Civ. P. 26(c).

### A. **Motions to Compel**

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a).  Specifically, a party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion."  *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-cv-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-cv-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted).  "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'"  *Gilmore v. Jones*, No. 3:18-cv-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel.  *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal

citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-cv-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

## II. ANALYSIS

Defendant requests various documents detailing Plaintiff's estimate and its prior drafts, quantity takeoffs, estimates for repair and remediation work related to the damages in this case, a current job cost report, and risk and contingency evaluations prepared over the course of construction. (ECF No. 25 at 6.) These documents and estimates related to the Project's cost and Plaintiff's preparation to bid, Defendant asserts, are directly tied to the cost overrun claims at the heart of this action and integral to its defense. (*Id*. at 4.) Defendant claims that even if the requested documents do not directly relate to the work it performed as a subcontractor, they are still relevant in understanding how Plaintiff calculated its damages and how the corrective work was priced. (*Id*.) For instance, Defendant hopes to contest some of Plaintiff's claims for damages by demonstrating various cost savings Defendant was able to achieve and identifying contingencies which Plaintiff had already accounted for in its preparation to bid. (*Id*.)

Plaintiff counters that the majority of requested documents are not related to Defendant's work on the Project, that "financial documents have absolutely no bearing on the validity of [Plaintiff's] claims or [Defendant's] defense," and the requests are therefore overbroad. (ECF No. 30 at 3.) In essence, Plaintiff argues the PSA delineates the parties' responsibilities and obligates Defendant to pay the requested damages. Plaintiff divides its requested backcharges, which constitute its damages, into two categories: (1) "backcharges for which [Plaintiff] seeks to recover

4

its actual costs incurred to correct items constructed using [Defendant's] deficient design or add items which were completely omitted from [Defendant's] design" (*id*. at 6-7), and (2) "backcharges for which [Plaintiff] seeks to recover actual costs which were not included in [Plaintiff's] lump sum price to the full quantity required as a result of [Defendant's] defective design" (*id*. at 6, 8-9). Plaintiff's estimate and overall job costs, sought by Defendant in this Motion, are unrelated to the first category of backcharges because they were incurred only after the bid was submitted. (*Id*. at 8.) For the second category, however, Plaintiff concedes that "it must show the portions of its estimate which demonstrate the quantities which [it] included in its bid" and asserts it has produced the applicable portions of the estimate. (*Id*. at 9.) As to the cost contingencies reflected in the financial documents, Plaintiff argues that the PSA does not permit Defendant to aggregate backcharges arising from deficient design work against cost savings realized in other areas of the project. (*Id*. at 10.) Therefore, Defendant is not entitled to discovery to develop a defense the PSA does not allow. (*Id*.) Finally, Plaintiff contends it has already produced all estimates "for any remediation, repair, rehabilitation, patching, tear out, or other work related to the [backcharges]," to the extent they relate to Plaintiff's damages. (*Id*. at 11.)

Turning first to the relevance of pre-construction estimates to Plaintiff's damages, the court finds that the estimates can shed light on how Plaintiff calculated its damages and built contingencies into its estimate to account for unexpected expenses. On a vast and intricate construction project, unplanned incidents are inevitable. Contractors will generally assess such risks and apportion additional funds for redesign or repair costs and other exigencies. Plaintiff's contention that the PSA forecloses *any* application of pre-planned contingency expenses to offset damages arising from Defendant's work ignores the critical fact that the terms of the PSA are at issue in this case. Defendant's Answer, for instance, contests whether the damages claimed by

5

Plaintiff even qualify as "backcharges" pursuant to the parties' contractual agreement. (ECF No. 5 at 1.) The court may not resolve these legal arguments through a motion to compel. Similarly, Plaintiff's claim that there was no design contingency on this Project (ECF No. 30 at 11), is disputed by Defendant, and cannot unilaterally foreclose further discovery on this issue. The Project estimate is relevant, at a minimum, to compare Plaintiff's anticipated and realized costs. Since Plaintiff seeks to recover the difference between the bid and its actual costs, the underlying details of the estimate are critical in discovery. Further, the categorization of backcharges into pre- and post-bidding costs is ineffective to the extent that both classes include actual costs incurred in the repair, redesign, or completion of Defendant's work. While the initial estimate may not have included the cost of correcting unforeseen design deficiencies, it is still relevant because it may permit Defendant to assess planned contingencies in various aspects of the design process. While Defendant may not be able to claim contingencies applicable to unrelated subcontractors, Defendant's design work indisputably reached many different components of the Project and was critical to the construction as a whole. Thus, Defendant is entitled to scrutinize the costs of construction for other components supported by its design work. In this light, both the estimate as well as any risk-contingency evaluations prepared before and after the bid's submission are discoverable and should be produced.

  Plaintiff's attempt to foreclose discovery for possible cost efficiencies realized through Defendant's work relies again on its own interpretation of the PSA and cannot therefore be sustained while discovery is in progress. (ECF No. 30 at 10 (arguing that Defendant cannot benefit from generating cost efficiencies because it was obligated to do so under the PSA)).) The PSA does allocate responsibility to both parties for "the recognition of material and cost efficiencies." (*Id*.) However, the extent to which certain cost savings on the Project qualify as "material or cost

efficiencies" is a disputed issue of fact. It is possible, for instance, that certain redesigns or other reconfigurations are not "cost efficiencies" as defined by the contract, yet they reduced construction costs and therefore permit Defendant to recover a portion of the savings to offset related backcharges. Thus, the pre-construction estimates can also clarify the efficiencies realized over the course of the parties' collaboration and should be produced.

Finally, Plaintiff's job costs are highly relevant in ascertaining damages because they may illuminate possible defenses such as Plaintiff's failure to mitigate. Additionally, to the extent Defendant claims its design was not defective, it may rely on the job cost report to identify areas where Plaintiff, for example, ordered unnecessary repairs. Defendant cannot explore such defenses without access to the estimated and actual costs of these repairs. While it is certainly possible that the actual repair and remediation costs are uniformly chargeable to Defendant under the PSA, this is not a foregone conclusion. A detailed breakdown of Plaintiff's repair costs is therefore relevant for all backcharges and must be produced. Still, the court recognizes that Defendant's request for the entire job cost report, covering expenses unrelated to the backcharges and to Defendant's work on the Project, is likely too broad. Though Defendant's design supported many components of the Project, current costs which are patently unrelated to the backcharges at issue here are not relevant and may be redacted from the production.

Considering these factors, the production shall include the following non-privileged[1] documents and information in the appropriate formats:

1. The detailed estimate with associated work papers related to Defendant's design, prepared in support of Plaintiff's bid;[2]

---

[1] To the extent that Plaintiff intends to withhold certain documents as privileged, it must comply with the requirements of Fed. R. Civ. P. 26(b)(5) and submit a privilege log to opposing counsel.

[2] At this stage, the court finds Defendant has not met its burden in establishing the relevance of previous drafts of the estimate.

2. All estimates (including drafts and old estimates) for any remediation, repair, rehabilitation, patching, tear out, or other work related to Plaintiff's backcharges, to the extent they have not yet been produced;

3. Current detailed job cost report pertaining to all components of the Project related to Defendant's design, or any repairs or remediation of Defendant's design, or otherwise proximately caused or incurred by Defendant's design;

4. Quantity takeoffs performed prior to Plaintiff's submission of the bid, as related to JMT's design and Plaintiff's backcharges;

5. Pre- and post-award risk/contingency evaluations and related documents.

All production shall be made subject to the operative Confidentiality and Clawback Order (ECF No. 18) and cannot be used for any purpose besides the present litigation. The court declines to enter sanctions against Plaintiff at this time.

### III.     CONCLUSION

For the reasons provided above, the court **GRANTS** Defendant's Renewed Motion to Compel (ECF No. 25) as set forth in this Order.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 30, 2021
Columbia, South Carolina